JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER OLE MUNCH, | ) | CASE NO. CV 18-868-R |
| | ) | |
| Appellant, | ) | ORDER DENYING APPEAL |
| | ) | |
| v. | ) | |
| | ) | |
| EDUCATIONAL CREDIT | ) | |
| MANAGEMENT CORPORATION; et al., | ) | Bankruptcy No. 9:16-bk-12162-PC |
| | ) | Adversary No. 9:17-ap-01008-PC |
| Appellees. | ) | |
| | ) | |
| | ) | |

This matter comes before the Court on appeal from the United States Bankruptcy Court for the Central District of California. Appellant filed his opening brief on April 16, 2018. ("Br." Dkt. 25). Appellees responded on May 16, 2018. ("Resp." Dkt. 29). This Court took the matter under submission on June 28, 2018.

On November 21, 2016, Appellant filed for Chapter 7 bankruptcy. On January 9, 2017, Appellant filed an adversary complaint seeking a declaratory judgment that his federal student loans were dischargeable as an "undue hardship" under 11 U.S.C. § 523(a)(8). The parties cross-moved for summary judgment. On January 16, 2018, the bankruptcy court denied Appellant's motion, granted Appellees' motion, and subsequently entered judgment in favor of Appellees. The bankruptcy court held that Appellant failed to establish by significantly probative evidence a

triable issue of fact regarding: (1) the existence of additional circumstances indicating that Appellant's state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and (2) Appellant's good faith efforts to repay the student loans—both of which are required to demonstrate "undue hardship" under 11 U.S.C. § 523(a)(8).

Appellant appeals the bankruptcy court's January 16, 2018 Order. This Court has jurisdiction over the appeal under 28 U.S.C. § 158. The single issue on appeal is: whether the bankruptcy court properly found that, pursuant to 11 U.S.C. § 523(a)(8), Appellant was not entitled to discharge his federal student loans based upon grounds of "undue hardship."

A bankruptcy court's "application of the legal standard in determining whether a student loan debt is dischargeable as an 'undue hardship'" is reviewed de novo. *Rifino v. United States*, 245 F.3d 1083, 1087 (9th Cir. 2001); *accord In re Roth*, 490 B.R. 908, 915 (B.A.P. 9th Cir. 2013) ("the ultimate 'undue hardship' determination is reviewed de novo because it is a mixed question of fact and law"). Further, "[w]e review the bankruptcy court's grant [or denial] of summary judgment de novo, and must view the evidence in the light most favorable to the non-moving party and determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the substantive law." *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008). A material fact is one that, "under the governing substantive law . . . could affect the outcome of the case." *Id.* A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment must initially identify the evidence which it believes demonstrates that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *In re Caneva*, 550 F.3d at 761. Lastly, we "review for an abuse of discretion the [bankruptcy] court's evidentiary rulings." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008).

Appellant, Christopher Ole Munch, is thirty-four years old and resides in Newbury Park, California. Appellant is not married and has no dependents. In 2003, at age 18, Appellant was convicted of a felony and imprisoned for 18 months. He was released in 2004.

In February 2008, Appellant graduated from Le Cordon Bleu, earning an Associate's degree in occupational studies. In December 2011, Appellant graduated from California Lutheran University, earning a Bachelor of Arts degree in political science and religion. In May 2015, Appellant graduated from the University of Southern California ("USC"), earnings a Master's degree in social work. Appellant financed his undergraduate and graduate education with student loans from Appellees United States Department of Education ("DOE") and Educational Credit Management Corporation (ECMC).[1] To date, Appellant has made only two payments on the DOE Loans, totaling $147.05, and as of October 5, 2017, the remaining balance was $304,331.29 (including principal and accrued interest). Similarly, Appellant has made only one payment towards the ECMC Loans, $53.64, and as of October 19, 2017, Appellant owed a remaining balance of $13,781.54 (principal plus accrued interest).

Appellant held various jobs while attending graduate school. In July 2015, approximately three months after graduating from USC, Appellant accepted employment as a case manager at Casa Pacifica Centers for Children ("Casa"), where he earned an annual salary of over $43,000. In addition, Appellant was able to contribute over $2,600 to a 401(k) retirement plan sponsored by Casa. However, on December 22, 2016, approximately one-month after filing his bankruptcy petition, Appellant quit his job, stating that he "was being discriminated against, retaliated against and harassed . . . by management." Appellant continued to pursue employment after this date, albeit unsuccessfully, and states that he spends "probably a half hour every day at least, at minimum" and "two, three hours a day" at maximum looking for employment. According to his

---

[1] Appellant's educational loans with DOE are evidenced by the following promissory notes: (1) Master Promissory Note Federal William D. Ford Direct Loan ("Direct Loan") (executed August 25, 2008), (2) Direct Loan (executed August 11, 2009), (3) Master Promissory Note Federal Stafford Loan FFEL ("Stafford Loan") (executed February 11, 2010), (4) Stafford Loan (executed February 12, 2010), and (5) Master Promissory Note Federal William D. Ford Direct PLUS Loan ("Direct PLUS Loan") (executed August 31, 2012) (collectively, "DOE Loans"). Likewise, Appellant's educational loans with ECMC are evidenced by a Master Promissory Note Federal Stafford Loan FFEL, executed on August 24, 2006 (the "ECMC Loans").

federal income tax returns, Appellant earned an adjusted gross income of $21,701 in 2014, $23,758 in 2015, and $43,524 in 2016.

Appellant contends that a material factual dispute exists related to his enrollment in an income based repayment ("IBR") plan,[2] asserting that "he made multiple attempts to not only seek forbearances, but requested on multiple occasions to enroll into income based repayment plans in an effort to restructure the loans[.]" Br. at 25. First, as to the DOE Loans, it is undisputed that Appellant automatically received a six-month deferment following his USC graduation date on May 13, 2015, and then immediately secured a one-year forbearance until November 16, 2016. It is also undisputed that just five days later, on November 21, 2016, Appellant filed for bankruptcy. Second, as to the ECMC Loans, it is undisputed that Appellant also received a six-month deferment following graduation up until November 15, 2015, at which time the loans entered repayment status. However, on November 14, 2015, Appellant proactively enrolled the ECMC Loans into an IBR plan, but then two days later, on November 16, 2015, requested and received forbearance status until July 12, 2016. Again, just four months later, on November 21, 2016, Appellant filed his bankruptcy petition. Thus, although Appellant did enroll the ECMC loans into an IBR plan, Appellant also immediately requested loan forbearance and then filed his bankruptcy petition, therefore, it is undisputed that Appellant never actually participated in the loan repayment program. Accordingly, there is no genuine dispute related to Appellant's efforts to restructure the DOE or ECMC loans, including actions related to forbearance or IBR enrollment.

Appellant also asserts that a genuine issue of material fact exists as to whether "repayment of the student loans would impose an undue hardship on Appellant[.]" Br. at 23. However, a finding of undue hardship is a legal conclusion entirely within the Court's purview, and any disagreement between the parties as to this legal conclusion cannot give rise to a factual dispute. *See In re Howe*, 319 B.R. 886, 888 (B.A.P. 9th Cir. 2005) ("'undue hardship' is a legal question"). Moreover, this is precisely the issue on appeal and will be addressed in the discussion.

---

[2] Under the federal IBR program, a borrower is required to pay 15% of his or her discretionary income each month. *See* 34 C.F.R. § 685.208(m). After 25 years of qualifying payments, a borrower's entire remaining loan balance is extinguished. *Id.* If a borrower earns less than 150% of the poverty level for a borrower's family size, the IBR payment is zero. *Id.*

4

Appellant's remaining asserted "disputed facts" have no direct relevance or consequence on his burden of proof regarding undue hardship—and therefore are not material. For example, Appellant asserts "that there is a genuine dispute to the Appellee's assignment/ownership of the student loan debt in question[.]" Br. at 21-22. However, whether Appellees own the loans in question is immaterial to determining whether the repayment of such loans would create an undue hardship for Appellant. Similarly, without pointing to supporting evidence in the record, Appellant disputes "the amount of the loans[.]" Br. at 25. However, based on the record before the Court, the Court can only agree with Appellees that this assertion "is immaterial because the *exact* balance of [Appellant's] student loans is largely irrelevant as to whether repayment constitutes an undue hardship, especially given the availability of [an IBR] plan that calculates repayment on the borrower's income and not solely on the student loan balance." Resp. at 35; *see In re Chapelle*, 328 B.R. 565, 569 (Bank. C.D. Cal. 2005) (determining no undue hardship despite finding that "no exact figure was established at trial as to the current balance of [Debtor's] student loan obligation").

To determine whether a debtor in bankruptcy may discharge a student loan, the Ninth Circuit follows the test adopted by the Second Circuit in *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987). *In re Pena*, 155 F.3d 1108, 1112 (9th Cir. 1998). In *Brunner*, the Second Circuit held that deciding whether a party can discharge their student loans requires a determination of whether discharging the loans would impose an "undue hardship" under 11 U.S.C. § 523(a)(8). *See Brunner*, 831 F.2d at 396; *see also Hedlund v. Educational Resources Institute Inc.*, 718 F.3d 848, 851 (9th Cir. 2013) ("Student loan obligations are presumptively nondischargeable in bankruptcy absent a showing of 'undue hardship.'"). The Second Circuit's standard for "undue hardship" requires a three-part showing:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal standard of living" for the debtor and his or her dependents if forced to repay the loans;
(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

|   |   |
|---|---|
| 1 | (3) that the debtor has made good faith efforts to repay the loans. |
| 2 | *Brunner*, 831 F.2d at 396. "The burden of proving undue hardship is on the debtor, and the debtor |
| 3 | must prove all three elements before discharge can be granted." *Rifino*, 245 F.3d at 1087-88. |
| 4 | The bankruptcy court found that Appellant could not show "additional circumstances" or |
| 5 | "good faith"—the second and third elements of the *Brunner* test.[3] Appellant now argues that the |
| 6 | bankruptcy court erred "in its assessment of the *Brunner* prongs" and by generally "performing the |
| 7 | judicial process[.]" The Court will address each of Appellant's arguments in turn. |
| 8 | First, Appellant argues that Appellees' motion for summary judgment was untimely filed |
| 9 | and that the bankruptcy court abused its discretion by considering the motion. Br. at 19-20. |
| 10 | However, upon review of the adversary proceeding docket, the Court finds that Appellees' motion |
| 11 | was in fact timely filed. As Appellees' correctly note, "[a]lthough the initial deadline for filing a |
| 12 | dispositive motion would have occurred thirty days after the close of discovery on July 31, 2017, |
| 13 | at the August 17, 2017 status conference . . . the bankruptcy court authorized Appellees to file the |
| 14 | motion and set a December 7, 2017 hearing date thereon (which was subsequently continued to |
| 15 | December 14, 2017). In accordance with Local Bankruptcy Rule 7056-1(b)(1), the motion was |
| 16 | required to be filed on or before October 26, 2017"—which is precisely the date upon which |
| 17 | Appellees filed their motion. *See* Resp. at 30-31. Additionally, the Court notes that bankruptcy |
| 18 | courts are given broad discretion in supervising the pretrial phase of litigation, such that it is not |
| 19 | an automatic abuse of discretion to consider a late filed motion. *See Kolob Heating and Cooling* |
| 20 | *v. Insurance Corp. of New York*, 154 F. App'x 569, 570 (9th Cir. Aug. 12, 2005) (holding that |
| 21 | district court did not abuse its discretion by considering late filed motion for summary judgment). |
| 22 | Second, Appellant argues that at the hearing on December 14, 2018, the bankruptcy court |
| 23 | violated Appellant's due process rights by not allowing him to separately and additionally proceed |
| 24 | with oral argument on his cross motion for summary judgment—this is separate and apart from |
| 25 | oral argument presented in opposition to Appellee's cross motion for summary judgment. *See* Br. |

---

[3] Appellant makes a passing argument that the bankruptcy court's ruling on the first *Brunner* element—"minimal standard of living"—was erroneous. Br. At 40-41. However, the bankruptcy court ultimately found in Appellant's favor as to this element, and, moreover, Appellee's do not cross-appeal the bankruptcy court's finding on this element. Accordingly, the Court need not address the first *Brunner* element.

at 26 ("Once the Court informed the parties that the matter(s) would be taken under submission, Appellant asked the [bankruptcy court] about oral arguments for the separate XMSJ, and Judge Carroll informed the Appellant that 'your time for arguing is over Mr. Munch.'"). Notwithstanding Appellant's alleged inability to present additional or segmented oral argument, the Court is satisfied that Appellant was afforded a fair and meaningful opportunity to put forward his arguments, by virtue of the fully briefed cross motion for summary judgment, his response to Appellees' motion for summary judgment, and the oral argument that he was permitted to present. *See Jordan Underwriters Servs., Inc. v. Intrepid Ins. Co.*, 46 F.3d 1142, 1142 (9th Cir. 1995) (finding plaintiff's contention that he was denied due process because the court decided his summary judgment motion without oral argument lacked merit because the motion was fully briefed). Accordingly, Appellant's due process attack on the bankruptcy court proceeding fails.

The second prong of the *Brunner* test requires Appellant to prove that additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period. *Rifino*, 245 F.3d at 1088. In analyzing the second prong of the *Brunner* test, courts may consider the following list of non-exhaustive factors:

> (1) Serious mental or physical disability of the debtor; (2) The debtor's obligations to care for dependents; (3) Lack of, or severely limited education; (4) Poor quality of education; (5) Lack of usable or marketable skills; (6) Underemployment; (7) Maximized income potential in the chosen educational field; (8) Limited number of years remaining in the debtor's work life to allow payment of the loan; (9) Age or other factors that prevent retraining or relocation as a means for payment of the loan; (10) Lack of assets; (11) Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets; and (12) Lack of better financial options elsewhere.

*Educ. Credit Mgmt. Corp. v. Nys*, 446 F.3d 938, 947 (9th Cir. 2006) (citations omitted).

The bankruptcy court considered and addressed many of these factors, summarizing that "there is no significantly probative evidence that [Appellant's] medical condition, alleged criminal stigma, or the quality of his education [has] prevented him from earning a living . . . [Further,] Appellant has no dependents. There is no evidence that [Appellant] has either maximized his

income potential in his chosen field or that he lacks useable or marketable job skills. His age does not prevent retraining or relocation as a means for repayment of the loans."

Now on appeal, Appellant provides the Court with lengthy multi-page tables of "cited portions of the record in support of Appellant's facts on the second prong[.]" Br. at 49-63. However, Appellant fails to link any of these facts to argument concerning incorrect conclusions of law drawn by the bankruptcy court. Nonetheless, the Court will address the bankruptcy court's analysis of Appellant's "additional circumstances," including his alleged disabilities, criminal record, and inadequate education.

As for Appellant's alleged disabilities (*e.g.*, ongoing back problems, difficulties with his knees, concussions/traumatic brain injuries, punctured and collapsed lung, paralyzing migraines, anxiety, depression, attention deficit disorder, and post-traumatic stress disorder), the bankruptcy court correctly reasoned that taking Appellant's "testimony regarding his current ailments as true, [Appellant] fails to explain how he was able to work with these conditions in the past but will be unable to do so in the future" and, further correctly found that Appellant failed to present evidence of "the prognosis for recovery," "the long-standing deleterious effects, if any, of his present physical and mental conditions on his ability to be gainfully employed in the future," and "whether his present physical and mental conditions will persist for a significant portion of the repayment period[.]" The Court notes that the bankruptcy court's focus on Appellant's prognosis, as opposed to diagnosis, was perfectly reasonable given that the second *Brunner* prong explicitly directs the court to consider whether Appellant's "state of affairs is likely to persist for a significant portion of the repayment period." *Brunner*, 831 F.2d at 396. In fact, as the *Brunner* court explained, "[r]equiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'" *Id*. Upon review of the record, and particularly the facts cited by Appellant, the Court finds that Appellant has failed to demonstrate that his alleged disabilities will likely pose a persistent obstacle to his employment and repayment of the loans.

1    As for his criminal record, Appellant contends that his criminal record precludes him from
2    working in the field of social work. Br. at 53. However, in the Court's view, the bankruptcy court
3    appropriately considered Appellant's criminal record and whether it would hinder Appellant's
4    ability to work in the field. Specifically, the Court points out that the bankruptcy court determined
5    that Appellant's felony conviction was not an insurmountable barrier because even though the
6    California Board of Behavioral Sciences previously did not allow Appellant to work for the
7    Department of Social Services, the bankruptcy court also found that Appellant was able to
8    "successfully obtain a waiver/exemption of the Board's denial and did [in fact previously] work in
9    the field of social work." Similarly, Appellant contends that the bankruptcy court did not consider
10   his "inadequate education." Br. at 53. However, based upon the Court's review of the evidence
11   cited by Appellant, the Court agrees with the bankruptcy court's finding that although Appellant
12   "claims that he has been routinely denied employment based on his inferior education . . . the
13   rejection letters offered by [Appellant] to support this assertion make no reference to [Appellant's]
14   education and training as a reason for denial of employment." Accordingly, the Court finds that
15   the bankruptcy court did not err when concluding that Appellant could not prove "additional
16   circumstances" indicating that his inability to repay his student loans is likely to persist.

17   The third prong of the test requires that the debtor make good faith efforts to repay the
18   loans. *Brunner*, 831 F.2d at 396. "Good faith is measured by the debtor's efforts to obtain
19   employment, maximize income, and minimize expenses. Courts will also consider a debtor's
20   effort, or lack thereof, to negotiate a repayment plan, although a history of making or not making
21   payment is, by itself, not dispositive." *In re Mason*, 464 F.3d 878, 884 (9th Cir. 2006). The court
22   may also consider the timing of Appellant's attempt to have his student loans discharged. *See id*.

23   Appellant again provides the Court will multi-page tables of "cited portions of the record,"
24   but fails to link any of these facts to legal argument. *See* Br. at 64-71. Thus, the Court will review
25   the bankruptcy court's good-faith determination for clear error. *See In re Figter Ltd.*, 118 F.3d
26   635, 638 (9th Cir. 1997) (good faith is "essentially a factual inquiry," thus this court has "in
27   various contexts, declared that [it] will review good faith determinations for clear error"). In

reaching its determination that Appellant failed to demonstrate good faith, the bankruptcy court found it significant that Appellant had not sought job counseling or advice from career counselors, nor had he updated his resume in the previous two years, and further found that there was ample time remaining each day for Appellant to engage in a more exhaustive job search. The bankruptcy court did not err in these considerations. The bankruptcy court also considered the timing of Appellant's attempt to discharge his student loans, finding that it weighed against a finding of good faith. The bankruptcy court noted that Appellant filed for bankruptcy less than one week after his DOE Loans entered repayment status, which was just over a year after graduating from USC. Based on this undisputed timeline, the bankruptcy correctly found that Appellant could not demonstrate good faith. *See Brunner*, 831 F.2d at 397 (holding that one of the reasons good faith was lacking was because the debtor had filed for discharge within a month of the date the first payment of her loans came due). Lastly, the bankruptcy court also correctly found that Appellant had not produced evidence demonstrating that he pursued IBR options with diligence. The bankruptcy noted that while he did enroll his ECMC loans into the IBR program in November 2015, he then immediately requested forbearance and subsequently filed bankruptcy. The bankruptcy court cited Appellant's deposition testimony, wherein he stated that he would not be willing to pursue participation in the IBR program because he could not afford it. However, this Court disagrees with Appellant's assertion. Appellant's refusal to participate in the IBR program, particularly when his payment would be zero until he secures gainful employment, weighs heavily against a finding of good faith. Accordingly, the Court finds that the bankruptcy court did not commit clear error in determining a lack of good faith.

Based on the evidence in the record, Appellant has failed to show "additional circumstances" or "good faith" as required by the standard set forth in *Brunner*. *See Brunner*, 831 F.2d at 396. The Court, therefore, agrees with the bankruptcy court that Appellant failed to meet

///

///

///

his burden of proving an "undue hardship" under 11 U.S.C. § 523(a)(8). Accordingly, the bankruptcy court's judgment is affirmed.

**IT IS HEREBY ORDERED** that Appellant's appeal is DENIED. (Dkt. 25).

Dated: September 25, 2018.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE